**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CABO OUTDOOR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:26-cv-1703 |
| vs. | ) | |
| | ) | |
| CITY OF INDIANAPOLIS, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Cabo Outdoor, LLC ("Plaintiff" or "Cabo"), by counsel, for its COMPLAINT AND DEMAND FOR JURY TRIAL against Defendant, City of Indianapolis, Indiana ("Defendant" or the "City"), states and alleges as follows:

## NATURE OF THE ACTION

1.    This civil rights action under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 challenges the City's administration of its outdoor advertising sign-permitting process whenever protected expressive activity is conditioned on discretionary administrative review, without objective, non-discretionary standards constraining that review. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 596 U.S. 61 (2022) (outdoor advertising signs are a medium of expression protected by the First Amendment).

2.    Sign Permit Application SGN26-00392 (the "Cabo Permit Application"), filed by Plaintiff with Defendant illustrates the constitutional defect. A true and accurate copy of the Cabo Permit Application is attached hereto as **Exhibit A**. The City withheld this routine sign permit for more than 49 days - more than four times the 12-business day period the City itself has set for completing its review - first on the basis of an undisclosed site-plan standard not applied to

comparable applicants, and then on the basis of a second, independent zoning-commitment theory that the City's own legal counsel ultimately withdrew. The permit issued only after Cabo made written requests for final action and the City's Office of Corporation Counsel reviewed the matter. A true and accurate copy of the permit issuance is attached hereto as **Exhibit B**.

3.    The constitutional injury is not that the City reached the wrong answer. The constitutional injury is that the City's permitting process allowed the governing standard to change during the review process without objective, non-discretionary procedural constraints.

4.    This defect is not confined to the events surrounding the Cabo Permit Application. The permitting process at issue governs every outdoor advertising application the City receives, and it will continue to govern the applications Cabo and other applicants submitted after this permit's issuance. A federal court's guidance is needed now - not because the permit remains outstanding, but because the process that allowed the City's own 12-business day review clock to become a 49-plus day, standard-shifting review remains in place and unconstrained by objective, non-discretionary criteria.

5.    Cabo brings this action to enforce its First Amendment rights, to obtain a binding judicial declaration regarding the constitutional defect in the City's permitting process and the enforceability of the specific 1986 zoning commitments the City sought to apply against Cabo and to recover nominal damages and its attorneys' fees and costs under 42 U.S.C. § 1988(b), with direct damages pled in the alternative as supporting evidence of injury.

6.    The City ultimately reached the legally correct result on SGN26-00392. This action does not challenge that outcome. It challenges the process by which the City arrived there and seeks prospective judicial guidance concerning the constitutional limits of that process. The relief Cabo seeks is forward-looking: a judgment in Cabo's favor would not punish the City for the

administrative history recounted herein, but would clarify going forward the process by which the City may administer its outdoor advertising sign-permitting process consistent with the First Amendment for Cabo's future applications within Marion County and for other applicants subject to the same process.

## PARTIES

7. Cabo is an Indiana limited liability company with a principal office address of 1075 Broad Ripple Avenue, #222, Indianapolis, IN 46220. Jeffrey Lee ("Mr. Lee") is the sole Member and Manager of Cabo.

8. The City is a municipal corporation and political subdivision of the State of Indiana, organized under Indiana law and operating under the form of government. The City acts through its elected officials, departments, agencies, boards, employees and agents, and various executive and administrative departments responsible for municipal governance and services.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)-(4) (civil rights jurisdiction), because this action arises under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

10. This Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because an actual and continuing controversy exists between the parties regarding the City's administration of its sign-permitting process and the validity and enforceability of the Statement of Commitments recorded against the Property (as defined below).

11. This Court has authority to award Plaintiff its reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b) should Plaintiff prevail on its claims.

**FACTUAL BACKGROUND**

**A. The Property and the 1986 Commitments**

12.     The property at issue, 8670 Allisonville Road, Indianapolis, Marion County, Indiana is the site of a Courtyard by Marriott hotel (the "Property"), illustrates the discretion problem described above.

13.     Evergreen Castleton Hotel Group LLC acquired the Property by Special Warranty Deed, Instrument No. A202500055672, recorded July 7, 2025, re-recorded as Instrument No. A202600014125 on February 20, 2026. Cabo is the Tenant under a Billboard Ground Lease with Evergreen Castleton Hotel Group LLC, effective May 11, 2026, for a 2,800 square-foot leasehold at the Property (parcel 8053007), signed by Mr. Lee on behalf of Cabo as Tenant.

14.     In 1986, Marriott Corporation, by Phillip A. Nicely, petitioned under Petition 86-Z-24 to rezone 6.89 acres including the Property from C-4/D-9 to C-6 to build a motel. The Metropolitan Development Commission certified the rezoning ordinance on April 17, 1986; the City-County Council took no action on Proposal Nos. 250-258, 1986 (including 86-Z-24) at its April 28, 1986 session, and the rezoning was deemed adopted by Council inaction, per the Journal of Proceedings of the City-County Council of Indianapolis-Marion County, 1986, Vol. 1, at approximately page 394 (retitled Rezoning Ordinance No. 60, 1986). A Statement of Commitments was recorded as Instrument No. 86-036907 on May 5, 1986, at 2:37 p.m., executed April 4, 1986 by Wilbur J. Harker, Vice President and Trust Officer of The Indiana National Bank as Trustee (Trust No. 27-7931), notarized by Mr. Nicely.

15.     Pursuant to Article VI, Section 3(b) of the Metropolitan Development Commission's Rules of Procedure and Ind. Code § 36-7-4-607, the Statement of Commitments contains three commitments: (1) development substantially in accordance with the 1986 site plan ("Commitment No. 1"); (2) landscape plan approval by the Director of Development Services

4

before any improvement location permit; and (3) dedication of right-of-way along Allisonville Road sufficient for a 70-foot right-of-way from centerline. The Statement of Commitments states its own durational and termination clause, verbatim: "effective upon... the adoption of rezoning petition 86-Z-24... changing the zoning classification of the real estate from C-4/D-9 to C-6... and shall continue in effect for as long as... zoned to the C-6 zoning classification or until such other time as may be specified herein." The 1986 site plan was for a 146-unit hotel and showed zero signage. Outdoor advertising was never contemplated as a use under the 1986 C-6 zoning, and at most could have qualified only as an accessory use.

**B. Indy Rezone (2016) and Statutory Termination of the Commitments**

16.    The City's consolidated zoning ordinance, the Indy Rezone, took effect April 1, 2016, and merged the C-6 zoning district into the C-4 zoning district. The official Indy Rezone text confirms this merger in multiple places, including the Use Table footnote (Ch. 743, Art. II, p. 441, fn. 1211) ("The C-4 district is a consolidated district of C-4 and C-6. C-6 uses were already permitted uses in the C-4"), the wireless facility height section (Ch. 743, p. 507, fn. 1528) ("C-6 district was merged into C-4, and former C-6 lands are now subject to a Category 3 height limit"), and the Sign Regulations introduction (Ch. 744, Art. IX, p. 644, fn. 2079) ("the C-6 district was consolidated with the C-4 district").

17.    The Property has been zoned C-4 - not C-6 - since April 1, 2016, and Ind. Code § 36-7-4-1015(b)(4)(A) provides that "a commitment may also contain terms providing that the commitment automatically terminates: (A) if the zoning district or classification applicable to the parcel is changed."

18.    Chris Steinmetz, Assistant Corporation Counsel, conceded by email that the 86-Z-24 commitments "have expired by their own terms," citing Ind. Code § 36-7-4-1015(b)(4)(A) directly. Notwithstanding this statutory termination and this concession, the City initially

attempted to apply Commitment No. 1 to Cabo's Application, as described below. This is the first of several points in the administrative history at which the standard the City applied to Cabo's Permit Application did not hold constant.

**C. The Permit Application and Administrative History (SGN26-00392)**

19.     The administrative history of Cabo's Permit Application unfolds across five phases: application submission, the start of administrative review, a change in the standard the City applied during that review, legal review by the City's own Office of Corporation Counsel, and permit issuance. The dates below are set out in full sequence because the sequence itself — not any single event in isolation — demonstrates that the City's permitting process allowed the operative standard to change while Cabo's application was pending.

**Phase One: Application Submitted**

20.     On May 28, 2026, Cabo filed the Cabo Permit Application for an off-premise advertising sign at 8670 Allisonville Road. On that same day, Bethany Pace ("Ms. Pace") sent an email establishing a 12-business-day review clock for Cabo's application - the City's own stated benchmark for completing its review. The Cabo Permit Application listed the Property's existing zoning as C-4, checked "NO" in response to the question regarding Commitments, and was countersigned by Taylor Holman, the Marriott representative, as owner, on May 29, 2026. Cabo's Permit Application included a certified orthophotographic survey exhibit bearing the seal of an Indiana Professional Land Surveyor - the only one of the seven permits compared in this Complaint (Cabo's application and six comparison permits, described in Section D below) to bear an Indiana Professional Land Surveyor's seal.

**Phase Two: Administrative Review Begins**

21.     On June 5, 2026, Ms. Pace signed a Notice of Review ("1st Review") identifying three holds on Cabo's application: (1) 86-Z-24 Commitment No. 1; (2) a partial Elevation Plan,

because the engineered drawing did not depict the sign's overall height due to an omission caused by the drawing's pole cut-out; and (3) an incomplete Site Plan, citing Sec. 740-802(a) of the City's ordinance as the basis for rejecting aerial photography as a substitute for a scaled site plan. A true and accurate copy of the 1ˢᵗ Review is attached hereto as **Exhibit C**. On June 16, 2026, and again on June 22, 2026, Ms. Pace maintained the aerial-imagery site-plan objection in email correspondence with Cabo.

22.     The Elevation Plan hold, unlike the other two holds identified in the City's June 5, 2026 Notice of Review, identified an objectively verifiable technical deficiency in Cabo's engineering drawing rather than a discretionary judgment about an undefined or evolving standard. Cabo corrected the drawing to depict the sign's overall height notwithstanding the pole cut-out, and, as described in Phase Four below, the City confirmed in its second Notice of Review that the Elevation Plan hold had been resolved. Cabo does not challenge, and this action does not concern, the City's authority to require complete engineering drawings or other objectively verifiable technical information as a condition of permit issuance. Cabo challenges only the discretionary permitting process described in this Complaint, which allowed reviewing officials to identify, redefine, supplement, or change the governing standards applied to a pending application without objective, non-discretionary procedural constraints.

**Phase Three: Governing Standard Changes**

23.     On June 22, 2026, Mr. Lee emailed Ms. Pace, stating as follows: "Out of curiosity, has there been a recent change in how Detailed Site Plans are reviewed for sign permits? The aerial surveys I have submitted as part of permit applications are substantially similar to those I have used in Marion County for many years and have historically been accepted for review." On June 24, 2026, Ms. Pace responded by email as follows: "It has been a requirement of the Ordinance for as long as I have been employed with the city (5 years)" (the "June 24 Statement").

7

24.     Also on June 22, 2026, Jeffrey D. York ("Mr. York"), Department of Metropolitan Development, introduced a second, independent rationale for withholding Cabo's permit: that outdoor advertising is a "primary use" under the current Use Table requiring a formal Modification of Commitments petition before Commitment No. 1 could be satisfied. Mr. York stated as follows, "That is how I got to primary use." As a result, the governing standard applied to Cabo's application had, within the same administrative review, changed from a site-plan-format objection to an independent commitment-modification theory, without any objective, non-discretionary criterion in the City's ordinance dictating when or whether such a shift may occur.

25.     On June 29, 2026, Cabo sent a letter to Mr. York and Ms. Pace titled "Formal Administrative Response, Request for Final Ministerial Action, and Preservation of Administrative Record," disputing both the site-plan condition and the primary-use/commitment-modification theory and requesting the City to identify its legal authority for both positions. A true and accurate copy of the June 29, 2026, letter is attached hereto as **Exhibit D**. Cabo sent further emails on June 22, July 16, and July 19, 2026 regarding the City's lapsed 12-business-day review clock; by Mr. Lee's July 16, 2026 letter, the application had been under review for 49 days.

**Phase Four: Legal Review**

26.     On July 15, 2026, Ms. Pace signed a second Notice of Review (the "2nd Review"): Commitment No. 1 remained unresolved; the Elevation Plan hold — the sole objectively verifiable technical deficiency among the three original holds — had been resolved following Cabo's correction of the drawing and ceased to be part of this dispute; and the Site Plan remained unresolved, again citing Sec. 740-802(a). A true and accurate copy of the 2nd Review is attached hereto as **Exhibit E**. Also on July 15, 2026, Mr. York reaffirmed the primary-use/commitment-modification position. On July 16, 2026, Cabo sent a letter titled "Cabo Administrative Response." A true and accurate copy of the July 16, 2026, letter is attached hereto as **Exhibit F**. On July 20,

8

2026, Mr. York disagreed with Cabo's comparison argument regarding substantial changes made without commitment modification at the Property.

27.     On July 21, 2026, a document titled "Summary of Cabo Outdoor's Legal Position - 8670 Allisonville Road (86-Z-24)" was prepared for the City's Office of Corporation Counsel, setting out Cabo's positions: 1) that the commitments terminated by their own duration clause; and 2) that "substantially in accordance" language cannot reach a use never contemplated in 1986, along with an eight-permit comparison table regarding the Property and three numbered questions for the City's Legal Department.

28.     On July 22, 2026, following that legal review, Mr. York emailed Cabo, stating as follows: "Our legal counsel agrees with you that... the commitments for the C-6 rezoning case are no longer valid." The City's Office of Corporation Counsel's review thus produced the third governing standard applied to Cabo's Permit Application within a single review period that the City itself had capped at twelve (12) business days.

**Phase Five: Permit Issued**

29.     On July 23, 2026, which is more than 49 days after Cabo submitted its application and well beyond the 12-business day review clock the City itself had set on May 28, 2026, and only after Cabo's written requests and further review by the City's own legal counsel, the City issued SGN26-00392 (Notice of Release, Permit Issuance Notification, SignPermit_20260723_164332.pdf).

30.     The City's successive positions are summarized in chronological sequence: (1) on June 5, and again on June 16, June 22, 2026, and July 15, 2026, Ms. Pace maintained that aerial imagery is not an acceptable substitute for a scaled site plan under Sec. 740-802(a); (2) beginning June 22, 2026, reaffirmed July 15, 2026, and defended again July 20, 2026, Mr. York maintained that outdoor advertising is a "primary use" requiring a Modification of Commitments petition

9

before Commitment No. 1 could be satisfied; and (3) on July 22, 2026, following review by the City's own legal counsel, Mr. York withdrew the second rationale, concluding that the commitments were "no longer valid" - a position consistent with the one Cabo had asserted in writing on June 29, 2026 and again on July 16, 2026.

The underlying facts of Cabo's Permit Application did not change between May 28 and July 23, 2026, but the standard the City applied to Cabo's Permit Application did. Moreover, the 49-plus day span between Cabo's submission and the issuance of the permit is the measurable gap between the City's own 12-business day benchmark and what the process actually produced once the governing standard shifted mid-review.

### D. Comparison and Pattern-and-Practice Evidence

31.    The comparison record set forth below is independent of any single property or application: unlike the 86-Z-24 commitments dispute, which turns on facts specific to the Property. This record demonstrates a defect in the City's permitting process itself and is a defect that will recur in every future permit application the process governs. Before the Cabo Permit Application reached final resolution, the same officials' own record in other, contemporaneous permit files already demonstrated that the standards applied to Cabo's application were not the standards those officials consistently applied to others.

32.    The City's June 24 statement that rejecting aerial-based site plans "has been a requirement of the Ordinance for as long as I have been employed with the city (5 years)" is in contrary to Ms. Pace's own departmental practice on at least two other permit applications that she personally reviewed in the same supervisory capacity. On permit application SGN24-00417 (6760 Dalton St., Indianapolis; applicant Michelle Noppenberger of Reagan Outdoor Advertising), Ms. Pace personally signed a Notice of Review (1st Review) letter dated June 3, 2024, raising a single issue (owner-consent documentation) and not raising any site-plan sufficiency objection. The

Department of Business and Neighborhood Services (the "DBNS") approved that permit the very next day, June 4, 2024, using a site plan that the City's describes as "simply an 'aerial photograph' with no scale included on the drawing." No condition was placed on that site plan.

33.     On permit application SGN25-00427 (10309 E. 56th St./10143 Pendleton Pike, Lawrence Township; applicant Michelle Noppenberger of Reagan Outdoor Advertising), Ms. Pace personally signed a Notice of Review letter dated July 8, 2025. DBNS approved that permit six days later, on July 14, 2025, using a site plan that the City's own comparison table describes as utilizing "an orthophotographic base that is blurred to low visibility." No condition was placed on that site plan. Both letters were signed by Ms. Pace in her capacity as Supervisor, Permit Issuance, Department of Business & Neighborhood Services - the identical supervisory role in which she reviewed and held Cabo's SGN26-00392 application for 49-plus days based on an aerial-imagery objection. Cabo does not allege, and the record does not show, that Ms. Pace personally created, stamped or signed the aerial-based site-plan drawings submitted on SGN24-00417 or SGN25-00427; rather, Cabo alleges that Ms. Pace, in her supervisory review capacity, personally signed departmental correspondence approving the review of those two applications without any site-plan-sufficiency objection, and that her own department then approved both permits within days using aerial photograph or orthophoto-derived site plans bearing no scale, no surveyor seal and no stated condition.

34.     The City's own case files reflect the same pattern across a broader set of applications. Of six recent, similarly situated competitor sign-permit applications reviewed by the same City departments and personnel, not one received any condition on its site plan - even though every one of the six relied on aerial or orthophoto imagery, and none bore an Indiana-licensed surveyor's seal. Despite being the only one of the seven applications compared below that was not

11

itself aerial-photograph/orthophoto-based, and the only one bearing an Indiana Professional Land Surveyor's seal, only the Cabo Permit Application received a site-plan condition. The comparison is set forth in the table below.

| Permit | Applicant / Address | Aerial/Orthophoto Base Used | IN Surveyor Seal | Scale & North Arrow Shown | Condition Placed on Site Plan | Submitted → Issued (turnaround) |
|---|---|---|---|---|---|---|
| SGN23-00453 | Outfront Media-Lawrence, 5001 N Shadeland Ave | Yes (MapIndy aerial, multi-source disclaimer) | No | Yes/Yes | No | 7/23/23 → 8/1/23 (9 days) |
| SGN24-00073 | JR Promotions LLC, 9622/9702 Pendleton Pike | No | Yes (Jonathan M. Isaacs, PLS) | Yes/Yes | No | 2/2/24 → 3/22/24 (~7 wks) |
| SGN24-00417 | Reagan Outdoor Advertising, 6760 Dalton St | Yes (aerial photograph, no scale per City's own table) | No | Yes/Yes (drawing itself shows Scale 1"=30′ despite table entry) | No | 5/30/24 → 6/4/24 (5 days) |
| SGN25-00427 | Reagan Outdoor Advertising, 10309 E 56th St | Yes (orthophoto, "blurred to low visibility") | No | Yes/Yes | No | 7/1/25 → 7/14/25 (13 days) |
| SGN25-00483 | Lamar Advertising GP Co. LLC, 3235 Hanna Ave | Yes (old easement plat + aerial screenshot) | No | No/No | No | 7/21/25 → 7/23/25 (2 days) |
| SGN25-00602 | Outfront Media, 2041 W Epler Ave | Yes (Weihe plan, explicit survey-status disclaimer) | No | Yes/Yes | No | 9/10/25 → 4/13/26 (~7 months) |
| **SGN26-00392 (Cabo, for comparison)** | **Cabo Outdoor, LLC, 8670 Allisonville Rd** | **No — certified orthophotographic survey exhibit** | **Yes (Indiana PLS)** | **Yes/Yes** | **Yes — the only permit of the seven with a condition placed on its site plan** | **5/28/26 → 7/23/26 (49+ days as of escalation)** |

35.     The master finding from this comparison evidence is that, of the six comparison permits, zero received a site-plan condition - only the Cabo Permit Application did, despite Cabo's submission being the only one of the seven bearing an Indiana-licensed surveyor's seal and being the only one that was not itself an aerial-photograph/orthophoto-based. This pattern demonstrates that the standards the City applied to Cabo were not standards the same officials applied consistently to similarly situated applicants - the same discretion problem illustrated by the shifting rationale recounted in Section C above.

**E. Non-Modification Pattern at the Property**

36.     The City's own permit file for the Property establishes that the City has not required a Commitment No. 1 modification for numerous permits at the Property over four decades, including permits issued within months of the original 1986 rezoning (ILP86-03817, ILP87-02084) and, most notably, permit ILP19-02239 (issued August 14, 2019), which authorized a structural change to the building's actual physical roofline - replacing the 1986 pitched-roof design with a flat roof assembly, together with a new freestanding porte cochère and courtyard fire pit - without any Commitment No. 1 modification, notwithstanding that Cabo's 2026 application sought only to add a leasehold sign use to the Property. As with the discussion of the Property and the 1986 Commitments in Section A above, this property-specific history is offered as context for, not as the basis of, the relief Cabo seeks: it is a secondary illustration of the discretion problem identified in the comparison evidence above, not an independent claim.

37.     Cabo regularly develops outdoor advertising within Marion County and reasonably expects to submit future permit applications governed by the same permitting process.

**F. Administrative Exhaustion**

38.     Cabo submitted two formal written administrative responses to the City - on June 29, 2026 and July 16, 2026 - each expressly invoking "Preservation of Administrative Record" and requesting final ministerial action. Through these written submissions, Cabo made a clear, contemporaneous record of its objections before the City's July 22, 2026 reversal and July 23, 2026, permit issuance. The permit ultimately issued through the City's own administrative concession, informed by the review of its own legal counsel - not by order of any court.

**G. Damages**

39.     Cabo suffered the completed deprivation of its First Amendment rights as alleged herein, entitling it to nominal damages as an independent basis of recovery for that completed

violation, irrespective of whether it can prove further compensable loss. See *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) (a request for nominal damages satisfies the redressability requirement of Article III standing for a completed violation of a constitutional right, even absent compensable loss). The gap between the 12-business day review clock the City set for itself on May 28, 2026, and the 49-plus days the City's review actually took once the governing standard changed mid-review, is itself a measure of the completed injury underlying this claim. Because outdoor advertising permits are sought under the same permitting process on a recurring basis, the absence of objective, non-discretionary procedural safeguards presents a recurring constitutional issue capable of repetition in future permit applications.

40.    In the alternative, and as further, secondary evidence of the injury caused by the City's conduct, Cabo incurred direct out-of-pocket costs of $1,238 for survey and site-plan rework expenses and $9,000 in lost leasing-opportunity revenue during the 49-plus day delay, the latter pled as a good-faith estimate of lost leasing opportunity rather than lost profits under any specific contract.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FIRST AMENDMENT — UNBRIDLED DISCRETION / PRIOR RESTRAINT (42 U.S.C. § 1983)

41.    Cabo incorporates by reference all preceding paragraphs of this Complaint, as if fully set forth herein.

42.    The City did not violate the First Amendment by reaching the wrong answer. It violated the First Amendment because its permitting process vested reviewing officials with discretion to identify, redefine or supplement the governing standard during review, without objective, non-discretionary procedural constraints. The City did not violate the First Amendment by requiring complete engineering drawings or other objectively verifiable technical information,

such as the Elevation Plan corrected during Phase Two of Cabo's application, described above; Cabo does not challenge the City's authority to impose such objective, verifiable requirements. The standard's actual change during Cabo's review, as alleged in Section C above, illustrates that discretion; it is not the limit of it - the same defect would exist even if the standard had gone undisclosed, or had been supplemented, without ever changing outright.

43.    Outdoor advertising signs are a medium of expression protected by the First Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 596 U.S. 61 (2022). A licensing or permitting scheme that conditions expressive activity on a discretionary, standardless administrative sign-off, without express and reasonable time limits and without defined, non-discretionary criteria, constitutes an unconstitutional prior restraint. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) (procedural safeguards are required for licensing schemes affecting speech, including specified, reasonable time limits within which the licensor must decide); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) (unbridled discretion vested in a permitting official is itself a First Amendment injury, independent of whether that discretion was actually abused in a particular case).

44.    The City's Sign Regulations, including Sec. 740-802(a) and related provisions, impose no express, non-discretionary time limit on permit review, and no defined, objective criteria governing whether a site plan submitted in aerial or orthophotographic form is acceptable, and no defined, objective criteria governing how, or when, the standard applied to a pending application may be identified, defined, supplemented or changed during review.

45.    As set forth in Section above, Ms. Pace and Mr. York exercised open-ended discretion to advance, and then withdraw, successive rationales for withholding Cabo's permit

over 49-plus days by first applying an undisclosed site-plan standard, and then by imposing an undisclosed "primary use"/commitment-modification theory that the City's own legal counsel ultimately and properly rejected. The absence of defined, non-discretionary criteria constraining the City's review proves is further evidenced by the comparison record set forth in Section D above. Specifically, the same officials and the same City department approved materially similar or weaker sign-permit applications within days (including two permits on which Ms. Pace herself signed the reviewing correspondence) while Cabo's application (which was the single most rigorously documented of the seven compared applications) was held hostage for 49-plus days based on a standard not applied to any comparison.

46.    This comparison record, and not the property-specific commitments dispute described in Section A above, supplies the evidentiary core of this claim: unbridled discretion is a problem of the permitting process itself, independent of any single application, and will recur in every future permit the process governs.

47.    The City's exercise of standardless discretion over Cabo's protected expressive activity, without express, reasonable time limits and without defined, non-discretionary criteria, constitutes an unconstitutional prior restraint on speech in violation of the First Amendment.

48.    The facts before the City did not change between May 28 and July 23, 2026. The only changes was within the standard the City applied to those facts , and the City was free to do so because no objective, non-discretionary criteria in the City's ordinance constrained when or whether such a shift could occur.

49.    This unbridled discretion is not confined to cases where the standard visibly shifts, as it did here. It also permits officials to apply an undisclosed or undefined standard for an extended period of time without any change in the evidence or facts ever occurring. This conduct reflects

the exercise of final policymaking authority by Ms. Pace and Mr. York described above, rendering the City liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

50.     Cabo was not harmed because the City ultimately reached an incorrect conclusion about the 86-Z-24 commitments or the sufficiency of Cabo's site plan. Rather, Cabo suffered damages because the process by which the City reached that conclusion allowed the governing standard to change during review without objective, non-discretionary procedural constraints - the same process that will govern Cabo's future permit applications within Marion County.

51.     The City's permitting scheme contains unconstitutional prior restraints on speech.

52.     As an unconstitutional prior restraint on speech, the City's permitting scheme violates the First Amendment to the United States Constitution

53.     As an unconstitutional prior restraint, the City's permitting scheme as describe herein are arbitrary, capricious, and/or unfounded; and otherwise results in the arbitrary deprivation of Cabo's (and those similarly situated) vested property rights/interests without due process of law.

54.     The City's permitting scheme, as describe herein, do not sufficiently constrain official discretion.

55.     As an unconstitutional prior restraint, the City's permitting scheme violate Cabo's (and those similarly situated) civil rights.

56.     Because the process by which the City reviewed the Cabo Pemrit Application allowed the governing standard to change during the review establishes that without objective, non-discretionary procedural constraints, the same process will govern Cabo's future permit applications within Marion County.

57.     Cabo has been damaged by Indianapolis's abridgement of Cabo's constitutional rights.  As a direct and proximate result of the City's violation of Cabo's First Amendment rights, Cabo suffered the injuries as describe herein  and is entitled to nominal damages, declaratory relief and its attorneys' fees and costs.

### COUNT II: DECLARATORY JUDGMENT (28 U.S.C. §§ 2201-2202)

58.     Cabo incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

59.     This count is pled to preserve a live, court-grantable form of relief that extends beyond the resolution of the Cabo Permit Application. Specifically, the City's permitting process that produced the 49-plus day, standard-shifting review of the Cabo Permit Application continues to govern the City's review of outdoor advertising sign permits, including the future applications Cabo reasonably expects to submit within Marion County.

60.     Cabo seeks two forms of declaratory relief. First and foremost, Cabo seeks a declaration that the City's administration of its outdoor advertising sign-permitting process - as illustrated by its handling of the Cabo Permit Application as described herein violates the First Amendment because it vests reviewing officials with discretion to identify, redefine or supplement the governing standard applied to a pending application during the review process, without objective, non-discretionary procedural constraints. The City's changing standard during the review of the Cabo Permit Application as described above illustrates an application of the City's unbridled discretion but there is no indication that the handling of the Cabo Permit Application is the outer limit of such unbridled discretion.

61.     Cabo's request is grounded in the completed controversy over the Cabo Permit Application and in Cabo's ongoing, non-speculative pattern of seeking outdoor advertising permits within Marion County under that same process.

18

62.     Second, Cabo seeks a declaration that the specific 86-Z-24 commitments are expired, void, and unenforceable. Although the City's Current Planning Manager concluded on July 22, 2026, that the 86-Z-24 commitments are "no longer valid," that conclusion was informal because it was expressed in an internal email,  and not embodied in any consent decree or court order. Because the City's course of dealing, including its initial 2026 attempt to apply Commitment No. 1 to Cabo's Permit Application notwithstanding the 2016 statutory termination, shows that the City may again attempt to reassert Commitment No. 1 against Cabo or the Property in a future permit cycle. Therefore, a binding judicial declaration is necessary to resolve this actual and continuing controversy independent of the City's informal concession, and to support Cabo's eligibility for attorneys' fees under 42 U.S.C. § 1988(b) as a prevailing party on a claim resolved by judgment rather than by the City's unilateral administrative action. See Lackey v. Stinnie, 145 S. Ct. 659 (2025).

63.     As set forth in Section A above, the Statement of Commitments recorded as Instrument No. 86-036907 contains its own express durational and termination clause, providing that it "shall continue in effect for as long as... zoned to the C-6 zoning classification or until such other time as may be specified herein."

64.     As alleged in Section B above, the Property has been zoned C-4, not C-6, since the Indy Rezone's April 1, 2016 effective date, and Ind. Code § 36-7-4-1015(b)(4)(A) independently provides that a commitment automatically terminates if the zoning district or classification applicable to the parcel is changed.

65.     Cabo is entitled to a binding judicial declaration, independent of the City's informal administrative concession, that the 86-Z-24 Commitments terminated by their own terms under the Statement of Commitments' durational clause and under Ind. Code § 36-7-4-1015(b)(4)(A)

upon the Indy Rezone's 2016 merger of the C-6 zoning classification into the C-4 zoning classification, and that the 86-Z-24 Commitments are accordingly expired, void, and unenforceable against Cabo and the Property. This declaratory relief is warranted independently of, and in addition to, the municipal liability described above. Because outdoor advertising permits are repeatedly sought under the same permitting process, the absence of objective, non-discretionary procedural safeguards presents a recurring constitutional issue capable of repetition in future permit applications, and the relief sought in this Count would clarify, going forward, how the City may administer its permitting process consistent with the First Amendment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Cabo Outdoor, LLC respectfully requests that this Court enter judgment in its favor and against Defendant, City of Indianapolis, Indiana, and grant it the following relief:

(a)     A declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that the City's administration of its outdoor advertising sign-permitting process, as illustrated by its handling of Permit Application SGN26-00392, violates the First Amendment because it vests reviewing officials with discretion to identify, redefine or supplement the governing standard applied to a pending application during review, without objective, non-discretionary procedural constraints;

(b)     A declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that the 86-Z-24 Statement of Commitments, Instrument No. 86-036907, is expired, void and unenforceable against Cabo and the Property;

(c)     An award of nominal damages on Count I, pursuant to *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), to vindicate the completed violation of Cabo's First Amendment rights;

(d)    An award of Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b);

(e)    In the alternative, and as supporting evidence of the injury caused by Defendant's conduct, an award of direct damages in the amount of $1,238 for survey and site-plan rework expenses and $9,000 for lost leasing-opportunity revenue during the delay period; and

(f)    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff Cabo Outdoor, LLC demands trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,

*/s/ John J. Morse*
John J. Morse
MORSE & BICKEL, P.C.
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN  46201
Phone (317) 686-1540
Fax (317) 630-2790
Morse@MorseBickel.com

*Counsel for Plaintiff, Cabo Outdoor, LLC*